IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JACK ALBERT SVOKE,

                       Plaintiff,

    v.                                                   OPINION and ORDER

DR. EVELOCH, SNOW THAO,
OFFICER ZINKOWICH, RN ALEXIS,                     20-cv-620-jdp
BILL WEISS, RN VILAS CO., and DR./MD,

                       Defendants.

---

Pro se plaintiff Jack Albert Svoke, now an inmate at Jackson Correctional Institution, is proceeding on claims that jail and prison officials at Marathon County Jail, Vilas County Jail, and Dodge Correctional Institution (DCI) violated his constitutional rights by failing to provide him with proper medical care for a jaw injury.

After screening Svoke's original complaint, I concluded that he stated claims against four defendants. Dkt. 1. I also concluded that he might be able to state claims against three additional defendants named in his complaint: Snow Thao, Officer Zinkowich, and an unidentified doctor. I gave him an opportunity to amend his complaint by describing how each of them violated his rights. In response, Svoke submitted three highly similar, but not identical, amended complaints over a two-week period, all before his filing deadline. Dkt. 16; Dkt. 18; Dkt. 19. I understand him to have filed three amended complaints because he had a problem with e-filing and was concerned that the court did not receive his submissions. *See, e.g.,* Dkt. 20. Svoke's third submission, Dkt. 19, is the most detailed, so I will treat it as his operative amended complaint and screen it as I screened his original allegations. Because Svoke's

amended complaint does not restate his original allegations, Dkt. 1 and Dkt. 19 make up the combined operative complaint in this case.

I will grant Svoke leave to proceed on medical care and excessive force claims against Thao and Zinkowich, and on a medical care claim against the unidentified doctor (who I will refer to as Dr. Doe). Svoke's additional allegations also state claims against six new defendants.

ALLEGATIONS OF FACT

According to Svoke's original complaint, he injured his jaw immediately before being arrested on December 21, 2019. Dkt. 1. He received jaw reconstruction surgery while incarcerated at Marathon County Jail, a procedure that involved wiring his mouth shut with arch bars so that he could heal. The arch bars were supposed to be removed eight weeks later, but they were not. Svoke was transferred to Vilas County Jail and then to DCI. Despite repeated requests for medical attention and dental care at both facilities, Svoke's arch bars were not removed and his mouth remained wired shut for several months. The delay caused him serious complications and severe pain.

I draw the following new allegations from Svoke's amended complaint. Dkt. 19. The night he was arrested, Thao, a Marathon County deputy, was the first officer on the scene. Svoke was already injured and bleeding when she arrived. Svoke told Thao that he was okay but that he would need a doctor. Officer Zinkowich arrived soon after. Thao and Zinkowich decided to arrest Svoke. Thao grabbed the hood of his sweatshirt, and with Zinkowich's assistance, forced him to the ground. Thao then drove her knee into Svoke's facial injury. The next thing Svoke remembers is waking up in a cell at the Marathon County Jail in severe pain, with disarranged teeth, and unable to talk.

I will infer that when Svoke was transferred to Vilas County Jail, officials knew that he would next be transferred to DCI. Dr. Doe, who worked at DCI, decided that Svoke could wait until he was transferred there to have his arch bars removed. Svoke arrived at DCI in June 2020. Over the next few months, he submitted numerous health and dental care requests to Dr. Fuller, his assigned doctor, and to an unnamed dental supervisor (who I will refer to as Dental Supervisor Doe). Still, he did not receive any care. Svoke then sent a complaint to DCI Warden Jason Benzel. Soon after, Kelly Salinas, the DCI litigation coordinator, and two unidentified librarians (who I will refer to as Doe Librarians 1 and 2) began interfering with his e-filing, blocking his law library access, and interfering with his mail.

In late August 2020, Svoke fell in his cell and hit his face, prompting officials to send him to Waupun Memorial Hospital. He received antibiotics and returned to DCI but was referred to a surgeon from UW Health in Madison. Fuller and the Dental Supervisor Doe canceled his appointment. Svoke's condition quickly worsened and officials sent him to UW Health. Doctors diagnosed him with cellulitis and an abscess that was likely caused by the prolonged presence of his arch bars. Doctors cut open and drained his abscess and scheduled him for surgery the next day. On August 30, doctors took off Svoke's arch bars, removed his abscess, and installed a drain tube. He spent four days at UW Health and three days at Waupun Memorial Hospital before returning to DCI.

ANALYSIS

A. Medical care claims

1. Defendants Thao and Zinkowich

Svoke contends that Thao and Zinkowich denied him adequate medical care for his jaw injury when they arrested him. Because Svoke had not been charged with an offense at the time of his arrest, the reasonableness standard of the Fourth Amendment governs his medical care claim. *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). Courts consider four factors when determining whether an arrestee's medical care was objectively unreasonable: (1) whether the officer has notice of the arrestee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns. *Id.* The analysis generally balances the second factor, the seriousness of the medical need, with the third factor, the scope of the requested treatment. *Id.* at 531.

Svoke's allegations are sufficient to state medical care claims against Thao and Zinkowich. When Thao arrived on the scene, Svoke was bleeding into the snow and holding his jaw. He told her that he would need to see a doctor. Although Zinkowich arrived later, I will infer that he was also aware of Svoke's visible injury. Neither Thao nor Zinkowich addressed Svoke's request for medical treatment or administered first aid. Instead, both officers forced Svoke to the ground while arresting him and Thao drove her knee into Svoke's facial injury, exacerbating his wounds and causing him to black out from the pain. Because this was an objectively unreasonable way to respond to Svoke's medical need, I will allow him to proceed on medical care claims against both defendants.

### 2. Defendant Dr. Doe

Svoke alleges that Dr. Doe denied him constitutionally adequate medical care by deciding that he could wait until he was transferred to DCI to have his arch bars removed.

As I noted in my original screening order, it is not clear what Svoke's status was at the time of Dr. Doe's alleged violation (while Svoke was incarcerated at Vilas County Jail). A review of Wisconsin Circuit Court Access records suggests that he may have been in custody on a supervision or probation hold. The Seventh Circuit Court of Appeals has not explicitly stated whether someone on a supervision, probation, or parole hold qualifies as a pretrial detainee or a convicted prisoner. *See Taufner v. Doe*, No. 19-cv-1288, 2020 WL 3415630, at *3 (E.D. Wis. June 22, 2020) (summarizing the current state of the law). The distinction matters because constitutional deprivations that occur prior to a criminal conviction arise under the due process clause of the Fourteenth Amendment, but deprivations that occur after a criminal conviction arise under the Eighth Amendment's prohibition on cruel and unusual punishment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). For screening purposes, I will analyze Svoke's claim under the more stringent Eighth Amendment standard, but his allegations are sufficient to state a claim under either standard. As the case progresses, the parties should explain what standard should apply.

The Eighth Amendment prohibits prison officials from consciously disregarding a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). A prisoner states an Eighth Amendment claim based on deficient medical care by alleging that (1) he has an objectively serious medical condition; (2) defendants knew that he had a serious medical condition that required treatment; and

(3) defendants disregarded his serious medical condition by failing to take reasonable measures to address it. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

I will infer that the arch bars in Svoke's mouth constituted an objectively serious medical condition. And I will infer that Dr. Doe consciously disregarded that condition by deciding that Svoke could continue to wait an indefinite amount of time to have the hardware taken out once he arrived at DCI. At the time of Dr. Doe's determination, DCI was closed due to COVID-19 and there was no known reopening date. And Dr. Doe did not examine Svoke at any point. I will allow Svoke to proceed on a medical care claim against Dr. Doe.

It is possible that Svoke intends to identify Dr. Doe as Lauren Hale. One of his amended complaints ascribes these allegations to Hale, Dkt. 16, but his operative complaint ascribes them to the unidentified doctor, Dkt. 19. Svoke should inform the court if he aims to name Dr. Doe as Hale. Otherwise, at the preliminary pretrial conference that will be held later in this case, Magistrate Judge Stephen Crocker will explain the process for Svoke to use discovery to identify the names of Dr. Doe, any other Doe defendants, or defendants identified by their last names only, and to amend the complaint to include his or her proper identity.

### 3.  Defendant Dr. Fuller

Svoke contends that Fuller denied him adequate medical care by ignoring his requests for pain management and medical attention at DCI. As I mentioned above, under the Eighth Amendment, the first question is whether Svoke had a serious medical condition. I've already inferred that his arch bars qualify as a serious medical condition. Svoke also says that he complained to Fuller about pain, and treatable pain is considered a serious medical need that cannot be disregarded. *See, e.g., Thompson v. Godinez*, 561 F. App'x 515, 518 (7th Cir. 2014). The second question is whether Fuller consciously disregarded Svoke's medical need. At this

6

stage in the case, I will infer that he did. In response to Svoke's requests, Fuller either did nothing, refused to see him, told him that his requests were "redundant," or said that he would not help Svoke because he was merely seeking narcotics. I will allow Svoke to proceed on a medical care claim against Fuller.

### 4. Defendant Dental Supervisor Doe

Svoke alleges that Dental Supervisor Doe denied him adequate medical care at DCI by ignoring his requests for dental care. As noted previously, Svoke has established a serious medical need. And I will infer that Dental Supervisor Doe consciously disregarded Svoke's condition by failing to address his requests and by denying responsibility for his dental care. Specifically, Svoke complained about pain in his requests and expressed fear that his dental surgeon had canceled on him so many times that he was unlikely to get his arch bars removed in the near future. Svoke says that Dental Supervisor Doe ignored him, told him to seek help with the Health Services Unit instead, and said that his surgeon—not the DCI dental unit—was responsible for his care. I assume, however, that Dental Supervisor Doe had some responsibility for managing Svoke's dental needs. I will allow Svoke to proceed on a medical care claim against Dental Supervisor Doe.

## B. Excessive force claims

In addition to alleging that Thao and Zinkowich denied him adequate medical care during his arrest, Svoke says that the officers harmed him for no reason. Svoke does not specifically assert an excessive force claim against either officer, but pro se plaintiffs are not required to plead particular legal theories. *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). An officer's use of excessive force during an arrest is governed by the Fourth Amendment's reasonableness standard. *Stainback v. Dixon*, 569 F.3d 767, 771 (7th Cir. 2009). An officer's

use of force is unreasonable if, judging from the totality of the circumstances, the officer uses greater force than was reasonably necessary to effectuate the arrest. *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009). Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Svoke's allegations suggest that Thao and Zinkowich used unnecessary force to arrest him. Svoke initially provided Thao with a false name, but that alone is not a reason to use force against an arrestee, and Svoke does not say that he physically resisted arrest. Instead, Svoke says that Thao and Zinkowich forced him to the ground unprovoked. After Svoke was on the ground, Thao drove her knee into his bleeding facial injury, causing him to black out from the pain. Svoke believes that this exacerbated his jaw injury. Prior to being arrested, he said he could still talk and his teeth felt normal. When he woke up the next day, he realized that his teeth were out of place and he could not speak. I will allow Svoke to proceed on excessive force claims against Thao and Zinkowich.

## C. First Amendment retaliation claims

Svoke contends that DCI officials began interfering with his ability to pursue his legal cases because he complained about his medical treatment. He does not expressly assert First Amendment retaliation claims, but as I noted above, he is not required to cite specific legal theories. *Small*, 398 F.3d at 898. To prevail on a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a "motivating factor" in the defendant's decision to take the actions that the resulted in the deprivation. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2006).

Svoke says that he wrote to Benzel, the DCI Warden, about the events surrounding his jaw injury. Sending an inmate complaint is protected First Amendment activity, *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020), so Svoke meets the first element. He also meets the second element. Svoke alleges that Salinas began intercepting his mail, interfering with discovery in his criminal case, restricting his e-filing access, and limiting his law library time. He also says that Doe Librarians 1 and 2 blocked him from the law library, refused to let him watch a DVD with evidence from his criminal case, and stole copies of his documents. These actions would likely deter First Amendment activity in the future. Svoke also satisfies the third element by alleging that Benzel ordered Salinas and the law librarians to make it more difficult for him to litigate his case because of his complaint. Svoke should be aware that although his allegations are sufficient to state a First Amendment retaliation claim, he will need evidence to support his allegations as the case progresses, particularly regarding how his complaint to Benzel caused the actions of Salinas and Doe Librarians 1 and 2.

ORDER

IT IS ORDERED that:

1. Plaintiff Jack Albert Svoke is GRANTED leave to proceed on the following claims:
   a. Medical care claims against defendants RN Alexis, Bill Weiss, Dr. Eveloch, Snow Thao, Officer Zinkowich, Dr. Doe, Vilas County Jail Nurse Doe, and Dental Supervisor Doe.
   b. Excessive force claims against Thao and Zinkowich.
   c. First Amendment retaliation claims against Jason Benzel, Kelly Salinas, and Doe Librarians 1 and 2.

2. Vilas County Sheriff Joseph A. Fath is added to the caption as a nominal defendant for the purpose of identifying Vilas County Nurse Doe.

3. The clerk of court is directed to forward a summons, the combined operative complaint (Dkt. 1 and Dkt. 19), the court's first screening order (Dkt. 10), and this order to the United States Marshal for service on Marathon County defendants Thao, Zinkowich, and RN Alexis, and on Vilas County Jail Nurse Doe.

4. Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's combined operative complaint (Dkt. 1 and Dkt. 19), the court's first screening order (Dkt. 10), and this order are being sent today to the Attorney General for service on state defendants. Plaintiff should not attempt to serve defendants on his own at this time. Under the agreement, the Department of Justice will have 60 days from the date of the Notice of Electronic Filing of this order to answer or otherwise plead to plaintiff's complaint if it accepts service for defendants.

5. For the time being, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer or lawyers who will be representing defendants, he should serve the lawyer directly rather than defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that he has sent a copy to defendants or to defendants' attorney.

6. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

7. If plaintiff is transferred or released while this case is pending, it is his obligation to inform the court of his new address. If he fails to do this and defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute them.

Entered January 27, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge